CHIEF OF POLICE OF WESTFORD vs. TOWN OF WESTFORD
& others.

Middlesex.    April 3, 1974. — June 25, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Police.   Municipal Corporations,* Police, Collective bargaining.

Comparison between G. L. c. 41, § 97, and § 97A. [529-531]

Provisions of a collective bargaining agreement adopted by the select-men of a town and a police union, which limited the power of the town's police chief by standards of reasonableness, equity, and seniority, did not violate the grant of authority to him by G. L. c. 41, § 97. [531-532]

A provision in a collective bargaining agreement that employees are entitled to a vacation after one year of service takes precedence, under G. L. c. 150E, § 7, as of July 1, 1974, over the provision, of G. L. c. 41, § 111, previously in effect, that employees are entitled to a vacation after thirty weeks of service in the preceding year. [532-533]

There was no conflict between a provision in a collective bargaining agreement permitting a six-month leave of absence for an employee and the specification in G. L. c. 31, § 46E, that such leaves shall be of no more than three months, except for a verified illness or with the prior consent of the civil service director. [533]

BILL IN EQUITY filed in the Superior Court on August 30, 1972.

The suit was reported by *Ponte, J.*

*Robert J. Canavan* for International Brotherhood of Police Officers & another.

*Richard W. Murphy* for the town of Westford.

*Edward R. Lembo* for the Chief of Police of Westford.

REARDON, J. A bill in equity was brought by the plaintiff chief of police of Westford seeking a declaratory decree that certain provisions of a collective bargaining agreement between the town of Westford (town) and the International Brotherhood of Police Officers, Local 326 (the union), acting as the sole and exclusive bargaining agent of the Westford Police Association, conflict with authority vested exclusively in the chief of police by G. L. c. 41, § 97, and by virtue of such conflict are void. G. L. c. 149, § 178I. The trial judge issued an interlocutory decree declaring certain provisions of the agreement valid and certain others invalid and temporarily enjoining the enforcement of the latter provisions, and reported the case to the Appeals Court pursuant to G. L. c. 214, § 30A. The case was transferred here for direct review under G. L. c. 211A, § 10. We have before us a statement of agreed facts, and the judge's findings, rulings and order for decree.

In August, 1972, the union and the selectmen of the town were negotiating a collective bargaining agreement under G. L. c. 149, § 178I, to govern "wages, hours and other conditions of employment" of Westford police officers represented by the union. A collective bargaining agreement had been in effect during the calendar year 1971 and by its terms continued in effect until the new agreement was concluded in 1972. During these negotiations the plaintiff assigned one Allen Comeau to a newly created position as investigator in the police department. This assignment was contrary to the still effective collective bargaining agreement which reserved such appointments to officers possessing greater seniority. This provision was not renewed in the 1972 agreement. Also in August, 1972, the plaintiff instituted new shift assignments for the personnel of the police department which were likewise in conflict with seniority provisions of the agreement in effect at that time. The selectmen ordered the plaintiff to rescind these orders which he did but, after consulting counsel, he reissued them. The selectmen then countermanded the orders by direct notice to the other officers. The disputing parties next successively posted their orders on, and re-

moved the other orders from, the department bulletin board, understandably causing some confusion within the department. The plaintiff brought this bill on August 30, 1972, seeking a declaration that his orders were proper and restraining the selectmen from interfering with them. The new collective bargaining agreement was executed on September 19, 1972, and the plaintiff amended his bill to raise the validity of numerous articles of that agreement. His contention is that these articles conflict with the authority granted the chief of police by G. L. c. 41, § 97, and that therefore the agreement must yield under G. L. c. 149, § 178I.[1]

The articles of the agreement which are challenged and which the judge declared invalid deal essentially with the method to be employed in the assignment of hours of work shifts, special duties, and time off for various purposes. In most cases these articles provide that these benefits and burdens are to be distributed on a fair, equitable rotating basis, often giving preference to employees with seniority. He found valid provisions of the agreement applying the

---

[1] General Laws c. 149, § 178I (as amended by St. 1970, c. 340) which is in effect through June 30, 1974, provides in part, "In the event that any part or provision of any such [collective bargaining] agreement is in conflict with any law, ordinance or by-law, such law, ordinance or by-law shall prevail so long as such conflict remains." This and other sections regulating the bargaining rights of public employees were repealed by St. 1973, c. 1078, § 1, and replaced with a new chapter, c. 150E, effective July 1, 1974. Instead of the quoted provisions, the new c. 150E, § 7, will provide: "If a collective bargaining agreement reached by the employer and the exclusive representative contains a conflict between matters which are within the scope of negotiations pursuant to section six of this chapter and any municipal personnel ordinance, by-law, rule or regulation . . . [or various other rules, regulations or statutes explicitly listed and not including G. L. c. 41, § 97], the terms of the collective bargaining agreement shall prevail." Section 5 of St. 1973, c. 1078, provides: "The terms of any collective bargaining agreement in effect prior to the effective date of this act shall remain in full force and effect until the expiration date of said agreement." The collective bargaining agreement presently in force expires June 30, 1975. A question may then be raised as to whether a provision of a collective bargaining agreement which conflicts with a statutory provision such as G. L. c. 41 § 97, which is not explicitly listed in G. L. c. 105E, § 7, will, after July 1, 1974, be valid. While the statute would clearly prevail under G. L. c. 149, § 178I, no specific statement to that effect appears in the new provisions. We need not decide whether the failure to list such statutes gives rise to the inference that conflicting provisions of an agreement are void. Here we find no conflict between the agreement and G. L. c. 41, § 97. Therefore the resolution of this question of statutory interpretation should await a more appropriate occasion. We discuss alleged conflicts between provisions of the agreement and two other statutes, *infra,* at 532-533.

same standards to overtime work and extra paid details, establishing a grievance procedure for settling complaints based on violations of the agreement, and permitting the granting of leaves of absence.

The plaintiff argues that the challenged sections conflict with the statutory authority vested in the chief of police by G. L. c. 41, § 97. This contention rests almost exclusively on our decision in *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492 (1970), in which we held invalid provisions of a collective bargaining agreement which deprived a chief of police of freedom to exercise the powers of command and assignment which were confided to his office by statute. The *Dracut* case, however, dealt with the powers of a chief of police created by G. L. c. 41, § 97A, not § 97, which is the governing statute in this case. Unlike the defendant town in the *Dracut* case, Westford has never accepted the provisions of § 97A. Indeed, at the annual town meeting in 1964, the town expressly refused to accept § 97A. The plaintiff's claim is that § 97, as well as § 97A, should be interpreted to create exclusive power in the police chief to deal with the matters of scheduling and assignment regulated in the collective bargaining agreement. This claim requires a comparative examination of the two statutes.[2]

---

[2] Section 97 reads: "In towns which accept this section or. have accepted corresponding provisions of earlier laws there shall be a police department established under the direction of the selectmen, who shall appoint a chief of police and such other police officers as they deem necessary, and fix their compensation in an amount not in the aggregate exceeding the annual appropriation therefor. The selectmen may make suitable regulations governing the police department and the officers thereof, and in towns which are not subject to provisions of chapter thirty-one to the contrary may remove the chief and other officers at pleasure. The chief of police shall be in immediate control of all town property used by the department, and of the police officers, who shall obey his orders."

Section 97A, as appearing in St. 1948, c. 595, reads: "In any town which accepts this section there shall be a police department established by the selectmen, and such department shall be under the supervision of an officer to be known as the chief of police. The selectmen of any such town shall appoint a chief of police and such other officers as they deem necessary, and fix their compensation, not exceeding, in the aggregate, the annual appropriation therefor. In any such town in which such appointments are not subject to chapter thirty-one, they shall be made annually and the selectmen may remove such chief or other officers for cause at any time after a hearing. The chief of police in any such town shall from time to time make suitable regulations governing the police department, and the

Both statutes provide that in towns which accept them a police department is to be established and that police officers and a chief of police are to be appointed by the selectmen who shall also determine their compensation. Both provide that the chief of police shall be in immediate control of all town property used by the department and that the chief shall be in immediate control of the police officers who shall obey his orders. The differences, however, are marked, and in every case they demonstrate a different balance of power and responsibility between the selectmen and the chief.

Section 97A provides that the police department is to be established by the selectmen but "under the supervision" of the chief. Section 97 provides that the department is to be established "under the direction of the selectmen." Under § 97A, the police chief and other officers may be removed by the selectmen but only for cause and after hearing. Under § 97, the chief and other officers may be removed by the selectmen "at pleasure." A police chief in a town which accepts § 97A is empowered to make "suitable regulations governing the police department, and the officers thereof, subject to the approval of the selectmen." Furthermore, the selectmen have only thirty days to voice their disapproval of such regulations promulgated by the chief or they become effective without their approval. Under § 97, only the selectmen have the power to make such "suitable regulations." The chief of police under § 97A has the responsibility to assign police officers to their respective duties. Such a power is absent from § 97. Finally, § 97A provides that § 97 shall not apply in any town which accepts § 97A. This catalogue of differences makes obvious the fact that the primary control of the

officers thereof, subject to the approval of the selectmen; provided, that such regulations shall become effective without such approval upon the failure of the selectmen to take action thereon within thirty days after they have been submitted to them by the chief of police. The chief of police in any such town shall be in immediate control of all town property used by the department, and of the police officers, whom he shall assign to their respective duties and who shall obey his orders. Section ninety-seven shall not apply in any town which accepts the provisions of this section. Acceptance of the provisions of this section shall be by a vote at an annual town meeting."

police department is in the chief of police under § 97A and in the selectmen under § 97.

A further indication of the legislative intention as to the relative powers of chiefs of police and selectmen under the two statutes, with particular reference to the selectmen's right to conclude collective bargaining agreements, is provided by St. 1969, c. 341, which inserted into G. L. c. 149, § 178I, a requirement that any provision of collective bargaining agreement which conflicts with a regulation made by a chief of police pursuant to § 97A shall prevail over such regulation. *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 499, fn. 3 (1970). The same language is continued in the successor statute, G. L. c. 150E, § 7, effective July 1, 1974. The Legislature must have been certain that a chief of police under § 97 had no right to make such regulations as could arguably supersede a collective bargaining agreement. It is inconceivable that the General Court wished to subordinate the regulations of a "strong" chief of police under § 97A to such an agreement while subordinating the agreement to the "regulations" of a "weak" police chief under § 97.

Our opinion in the *Dracut* case relied heavily on the explicit grants of power to the chief of police made by § 97A and absent in § 97. *Id*. at 500-504. It may be that by providing in § 97 that the chief shall be in "immediate control" of the police officers the Legislature intended that suitable regulation by the selectmen maintain some minimum level of generality. Highly particular regulation might indeed be as "subversive of the discipline and efficiency which is indispensable to a public law enforcement agency" in a town governed by § 97 as in one governed by § 97A. *Id*. at 502. But our use of the quoted language in the *Dracut* case was certainly not meant to indicate that order and efficiency in police operations was only possible if every police chief in every town were vested with the broad powers granted by § 97A. That matter has already been determined by the Legislature which has given towns the alternatives of having a "strong" chief of police, a "weak" chief of police, or no chief of police at all. G. L. c. 41, § 96.

The regulation embodied in the collective bargaining agreement at issue here is sufficiently general. The chief of police is still given broad discretion in the day to day operations of the department. In certain areas of assignment he is limited only by such general standards as reasonableness and equity. In others he must abide by the objective standard implicit in recognition of seniority. These rules are not so detailed as to conflict with the statute's reservation of "immediate control" to the chief of police. Their generality is not diminished by the fact that, like all rules, they must be applied in particular cases. While some may believe that the proper organization and operation of a police department require more flexibility than those provisions permit, that is apparently not the opinion of the selectmen. And it is to the selectmen that the Legislature has committed that decision. We therefore hold that the decree of the judge is in error with respect to those provisions of the collective bargaining agreement which he held inconsistent with G. L. c. 41, § 97. For the same reason we affirm his decision with respect to those provisions he found consistent with the statute.

Two articles of the collective bargaining agreement raise questions of possible conflicts with other sections of the General Laws. In connection with art. 12, "Vacations," the judge found that effective January 1, 1971, the town had accepted the provisions of G. L. c. 41, § 111. That section prescribes a minimum vacation of two weeks for employees who have worked for thirty weeks in the twelve months preceding June 1 each year. Article 12 calls for an annual vacation of two weeks only after one year of service has been completed. This is a conflict with respect to any officers who have worked more than thirty weeks but less than one year. The two weeks' minimum vacation period for these officers is to prevail. See G. L. c. 149, § 178I. It follows that two weeks' vacation is due to those officers who accumulated thirty weeks' service in the last relevant twelve months' period ending June 1, 1974. In calculating vacation time for service after July 1, 1974, the effective date of G. L. c. 150E, the collective bargaining agreement is to govern.

365 Mass. 526                                                              533

Chief of Police of Westford *v*. Westford.

General Laws c. 150E, § 7, provides that where a collective bargaining agreement conflicts with G. L. c. 41, § 111, the agreement takes precedence.

Finally, the plaintiff argues that art. 20, "Leave of Absence," which was found valid by the judge, conflicts with G. L. c. 31, § 46E. Article 20 allows such leave to be granted "for a limited period not to exceed six (6) months . . . for any reasonable purpose," with the definition of "reasonable purpose" to be jointly determined by the union and the town. The statute specifies a maximum period of leave of absence of three months except on account of a verified illness or with the prior permission of the director of civil service. There is no necessary inconsistency. The agreement does not compel the town to grant a leave of more than three months. It is merely permissive and the town must concur in the determination of "reasonable purpose." Similarly, the statute does not forbid leaves of greater than three months. It merely limits them to those granted for reasons of health or with the consent of the civil service director. These statutory requirements can certainly be considered by the town and the union in deciding reasonable cause in each case of a leave greater than three months so that the enforcement of the agreement will not in practice conflict with the statute.

The interlocutory decree is reversed. A final decree is to be entered declaring the collective bargaining agreement valid with the exception that art. 12 is not to be applied to deny two weeks' vacation in the period June 1, 1974, to May 31, 1975, to police officers who have completed thirty weeks' service in the period June 1, 1973, to May 31, 1974.

*So ordered.*