MAYOR OF SOMERVILLE & others[1] *vs.* DONALD A. CALIGURI & others.[2]

Middlesex.    April 27, 1979. — September 7, 1979.

Present: GRANT, PERRETTA, & KASS, JJ.

*Arbitration*, Police. *Police*, Firearms, Assignment of duties. *Municipal Corporations*, Collective bargaining, Police.

A city's chief of police violated the terms of a collective bargaining agreement by assigning an officer to an area where his safety would be endangered without his service revolver, and refusing to issue him a service revolver, and it was within the authority of an arbitrator to award the officer his back pay and reinstatement with full and accumulated seniority. [336-339]

CIVIL ACTION commenced in the Superior Court on October 31, 1977.

The case was heard by *Meyer*, J., a District Court judge sitting under statutory authority.

*David A. Wylie, Gordon A. Martin, Jr., & James D. Hanrahan*, for the plaintiffs, submitted a brief.

---

[1] The city of Somerville and the chief of its police department.

[2] Officers of the Somerville Police Employees Association.

PERRETTA, J. This is the second recent occasion where we have been presented an arbitration award arising out of a dispute over a police chief's refusal to issue a service revolver to a police officer. See *Boston* v. *Boston Police Patrolmen's Assn., ante* 220 (1979). In the present case the police chief denied a black officer a service revolver and then assigned him to foot patrol duty in an area of the city where he had previously been met with open hostility from area residents. The officer refused these assignments and as a consequence he was listed as "absent without leave," thereby losing his salary, benefits, and seniority. When the arbitrator awarded the officer his back pay and ordered his reinstatement with full and accumulated seniority, the city moved to vacate the award. G. L. c. 150C, § 11. The Superior Court trial judge denied the motion and confirmed the award. We affirm the judgment.

Our review of the award is limited, *School Comm. of West Springfield* v. *Korbut,* 373 Mass. 788, 792-793 (1977), and the only issue is whether the arbitrator ordered relief which was beyond his power. *School Comm. of Braintree* v. *Raymond,* 369 Mass. 686, 690-691 (1976). *School Comm. of West Bridgewater* v. *West Bridgewater Teachers' Assn.,* 372 Mass. 121, 125-128 (1977). The city argues that the chief alone controls the issuance of weapons to his officers, G. L. c. 41, § 98, and that the arbitrator can do nothing which interferes with this authority; the officer's grievance is that the chief has acted "improperly and discriminatorily." In *Boston Police, supra* at 226, 227, we held that "the carrying of firearms is to be controlled by specified officials" whose judgments and decisions on the issue will not be disturbed "in the absence of a showing that [they have] abused [their] managerial powers." This case presents such a showing.

The facts which culminated in the officer's grievance, as found by the arbitrator, are as follows. The officer, Somerville's first black policeman, joined the department in 1973, and he served without a disciplinary incident for

over two years. In 1974 while on duty he shot his service revolver at a car when the driver attempted to run him over; the chief regarded the officer's action as justifiable, and he thereafter assigned the officer to another area of the city for his safety. In 1976 the officer was suspended for thirty-one days because he twice missed roll call, once in May and once in June. He completed this suspension period and returned to duty on August 24, 1976, when his revolver was taken away from him, and he was assigned to the garage to wash police cars.[3] In early September he was again suspended, this time for three days; his dereliction was his failure to be in full uniform while washing cars.[4] He returned to duty on September 14, 1976, and reported for roll call, at which time he was assigned to foot patrol of the Glen Park area of the city from 4:15 P.M. to 1:00 A.M. He was further informed that "pursuant to the orders of the Police Chief" he was to perform his night patrol without a service revolver, night stick, walkie-talkie, or mace. As known by police officials, the callboxes in the area often did not work because of vandalism. This was the first time any officer had been assigned to patrol any area in the city without a service revolver.[5]

The officer had patrolled this area in the past, and the residents had subjected him to racial slurs, epithets, and threats. A barrel had been labelled with his name, and, then, "as a symbolic target," it had been riddled with bullets by youths in the area. The officer refused to accept this assignment unless he should be given his usual equipment, and he continued to report for roll call, at which time he would be assigned to a "trouble area" without his revolver. He refused all these assignments, and he ultimately initiated grievance proceedings.

---

[3] Garage duty was regarded by the police officers as "punishment detail."

[4] Other officers had frequently washed cars while not in full uniform and they were not disciplined.

[5] When other officers had their revolvers taken from them, they were assigned to clerical work or "inside jobs."

The chief sought to explain his action by pointing to the 1974 shooting incident and the two roll call absences in May and June of 1976; however, the arbitrator rejected this explanation because the chief had found the officer's actions in the former incident justifiable, and because he had previously punished the officer for the latter incident by a thirty-one day suspension.

The collective bargaining agreement provides that the city shall furnish each officer, "at its sole cost and expense," all equipment necessary "for the performance of police duties" and that these duties shall be assigned on the basis of the "efficiency and integrity" of the police department, with due consideration for personal hardship. Because the chief assigned the officer to an area where his safety would be endangered without his service revolver, and then refused him that very equipment which he, the chief, had determined to be necessary for the performance of that assignment, as evidenced by the fact that no other officer had ever been required to perform street patrol without a gun,[6] the arbitrator found the chief's actions "arbitrary, capricious and blatantly discriminatory," and in violation of the agreement.

In *Boston Police, supra* at 226, we held that a police chief's legislative grant of authority, here G. L. c. 41, § 98, to determine which officers shall carry what weapons, cannot be disturbed or altered by arbitration. The city argues that because the agreement requires the chief to issue weapons it contradicts the statute and cannot prevail in this controversy. See *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 503 (1970) (an agreement providing for the establishment of a uniform, "which is to include weapons" was held to be in conflict with § 98). The disputed provision does not infringe upon the chief's

---

[6] The arbitrator found that the one other exception to this practice, which also involved a "minority officer" and which occurred subsequent to September 14, 1976, was insufficient "to nullify" this as a long standing practice.

managerial prerogatives. It is simply a commitment by the city that it will incur the cost of furnishing to its police officers that equipment deemed necessary for them to carry out their jobs. The chief's right to make his statutory determination remains intact, and there is no conflict between § 98 and the agreement. Further, there is no conflict between § 98 and the arbitrator's award because the arbitrator did not order the chief to return the gun to the officer. Compare *Boston Police,·supra* at 227.

We perceive the chief's act as an imposition of a sentence rather than an exercise of his managerial powers to issue weapons and make job assignments. This officer was ordered to do that which no one else had ever been asked or required to do. The chief offered "no reasonable explanation or legitimate justification" when his management was questioned by the arbitrator and instead claimed the use of his statutory power, a claim which is here nothing more than "a pretense or device actuated by personal hostility" and motivated by a concern which is far removed from the efficiency and integrity of the police department. Contrast *Raymond*, 369 Mass. at 689; *Boston Police, supra* at 227.

The agreement had been violated, and the arbitrator fashioned a proper remedy when he awarded the officer lost compensation and benefits and ordered him reinstated with full and accumulated seniority.

*Judgment affirmed.*