MARTIN B. KRAFT *vs.* POLICE COMMISSIONER OF BOSTON.

Suffolk. November 1, 1993. - March 10, 1994.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Police,* Assignment of duties, Authority of police chief, Firearms. *Public Employment,* Police. *Contempt. Practice, Civil,* Contempt, Appeal.

In a contempt proceeding brought by a discharged police officer who had been reinstated pursuant to court order to his former position, the judge correctly concluded that the police commissioner had acted in good faith in the exercise of his managerial discretion in requiring the officer to demonstrate his fitness to carry a service revolver and that the commissioner was not thereby in contempt of the previous reinstatement order. [239-241]

A litigant who failed to assert any right to submit live testimony at a hearing on a complaint for contempt waived any such rights. [241]

In a civil action, a party was not entitled to raise an issue for the first time on a second appeal, where he could have, but did not, raise the issue the previous time the matter was appealed. [242]

CIVIL ACTION commenced in the Superior Court Department on October 31, 1988.

After review by this court, 410 Mass. 155 (1991), further proceedings were had before *John C. Cratsley,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Harold L. Lichten* for the plaintiff.

*Susan M. Prosnitz,* Special Assistant Corporation Counsel, for the defendant.

O'CONNOR, J. The plaintiff, Martin B. Kraft, was appointed a Boston police officer in 1983 and served with an unblemished record for several years. In 1988 the defendant police commissioner terminated Kraft's employment after discovering that, in completing application forms for the police officer position, Kraft had failed to disclose that he had

been hospitalized for mental illness. At the time of his discharge, Kraft was a detective in the drug control unit. Kraft brought an action in the Superior Court challenging his discharge, and a judge determined that the commissioner's action had been unlawful. After that determination was made, the judge conducted a hearing on damages incurred through January 16, 1990. The parties agreed that from that date forward Kraft would be placed on administrative leave with a rate of pay of a detective with the same rank and title he had held before his employment was terminated.

After the completion of the hearings, the judge ordered the defendant to "reinstate [the] plaintiff . . . to his former position as a detective assigned to the Drug Control Unit, without loss of benefits or seniority." A few weeks later the judge amended the order to require the defendant to "reinstate [Kraft] to the position, by rank, title, and salary, of detective [not necessarily assigned to the drug unit] without loss of benefits or seniority." The judge also awarded Kraft damages for "lost wages, benefits, overtime and paid detail during this period and damages for emotional distress" "up to and including January 16, 1990," and attorney's fees and costs. The judge stayed Kraft's reinstatement to active duty, pending appeal. On May 15, 1991, this court affirmed the judgment. *Kraft* v. *Police Comm'r of Boston*, 410 Mass. 155 (1991) (*Kraft I*).

The plaintiff appeals and the defendant cross appeals from an order that the judge issued on January 29, 1992, approximately eight months after this court's decision. *Kraft I*. We transferred the case to this court on our own initiative. The January 29 order was in response to the plaintiff's "Petition for Contempt: and/or Motion to Clarify and Enforce Judgment." The facts relevant to the plaintiff's petition, taken from the judge's written findings, are as follows: "On June 13, 1991 [the] plaintiff returned to active duty. After a week of training at the Boston Police Academy, [the] plaintiff was assigned to the Identification Unit of the Department with the same rate of pay he was earning while on administrative leave. At this time [the] plaintiff was denied recertification

for use of a department service revolver, despite [the] plaintiff's request for recertification. [The] [p]laintiff was informed that in order to be recertified for use of a handgun, he would have to take a psychological test and undergo an examination by the police department psychologist. After consulting with his attorney, the plaintiff complied with these requests.

"On August 16, 1991 [the] plaintiff was provided a copy of the police department psychologist's report. The report recommended that [the] plaintiff not be reinstated to the position of police detective and that he not be certified for use of a firearm. On August 19, 1991 counsel for [the] plaintiff was informed by counsel for the defendant that the plaintiff would not be recertified for use of a service revolver and that he would remain in his present assignment in the Identification Unit. The Identification Unit does not offer any opportunity for overtime work and, without a service revolver, [the] plaintiff has been unable to obtain other available overtime and paid detail work."

The judge did not hear testimony in connection with the plaintiff's petition. However, he was provided with numerous materials including an affidavit of the plaintiff's counsel, an affidavit of the plaintiff with the police department psychologist's report and other exhibits attached, and the reports and curriculum vitae of a psychologist and a psychiatrist of the plaintiff's choosing. In his affidavit, the plaintiff disputed several factual assertions bearing on his medical history as described in the department psychologist's report. Also, in response to an assertion in the department psychologist's report, he disputed that he had "ever tr[ied] to 'beat the test' on any test given to [him] by a licensed psychologist or psychiatrist." Repetition here of the contents of the psychologists' and psychiatrist's reports is unnecessary. It is enough to say that the department psychologist expressed an opinion that, in light of the plaintiff's being "unwilling or unable to be truthful when the truth may cast a negative light on him" and the plaintiff's mental health and substance abuse history, the plaintiff "is . . . an unacceptable risk." The department

psychologist declined to recommend Kraft for reinstatement to the position of police detective, and he advised that Kraft "should certainly not have his firearm returned to him, nor should he be given a permit to carry a firearm at this time."

The psychologist chosen by the plaintiff, on the other hand, was highly critical of the department psychologist's report, and concluded that Kraft "has made a remarkable recovery from the impediments of an early childhood and young adulthood" and "is capable of performing his job as Detective with the Boston Police Department," including the carrying of a weapon. The psychiatrist's report, too, was favorable to the plaintiff. The psychiatrist concluded that "Mr. Kraft is fit to be a police officer and it is safe for him to carry a gun."

By his "Petition for Contempt: and/or Motion to Clarify and Enforce Judgment," the plaintiff seeks a judgment that, by refusing to recertify him to use a service revolver and by limiting him to "non-detective" services in the identification unit, thereby depriving him of an opportunity for overtime work and paid details, the defendant police commissioner violated the order of the Superior Court judge, affirmed in *Kraft I, supra*, that the plaintiff be reinstated to the position of detective. The plaintiff seeks an adjudication of contempt or, as an alternative if such an adjudication should be denied, a new order more clearly requiring the commissioner to recertify him to carry a service revolver and to receive assignments customarily given to detectives. Only in that way, the plaintiff contends, will he be "made whole" following the unlawful termination of his employment as the judge's prior order contemplated.

Following oral argument on the petition and the submission of briefs by counsel, the judge awarded Kraft $38,668.73 in damages for the period from January 17, 1990, to August 19, 1991, the period the plaintiff was on administrative leave, plus interest, and ordered that the plaintiff's petition be dismissed. Kraft appeals from the dismissal of his petition. The police commissioner cross appeals from the award of damages. In his memorandum of decision ex-

plaining his reason for dismissing the petition, the judge focused on "the well-recognized authority of the Boston Police Commissioner to determine the fitness of an officer to perform his duties including the fitness of an officer to carry a firearm. *Nolan* v. *Police Comm'r of Boston*, 383 Mass. 625, 630 (1981). See St. 1962, c. 322, § 1 (14); G. L. c. 41, § 98; *Boston* v. *Boston Police Patrolmen's (Ass'n), Inc.*, 8 Mass. App. Ct. 220, 225-227 (1979) (a 'compendium of legislation' regulating who shall carry a firearm and under what conditions 'demonstrates a clear policy statement by' the Legislature that 'the carrying of firearms is to be controlled by specified officials')." In addition, the judge noted that "it is also clear that a police commissioner may require an officer returning to active duty to undergo a psychiatric examination before reissuance of a firearm. *Nolan, supra* at 626 and 629 n.4; *Boston, supra* at 227."

The judge continued as follows: The "[p]laintiff has suggested that the defendant's requirement that he undergo a further psychiatric examination was undertaken in retaliation for his success in bringing his discrimination claim [*Kraft I*]. [The] [p]laintiff has failed, however, to make a *prima facie* showing of retaliation. *Radvilas* v. *Stop & Shop, Inc.*, 18 Mass. App. Ct. 431, 439-440 (1984). Absent a showing that the defendant has 'abused his managerial powers,' this Court has no authority to interfere with the defendant's administrative prerogative to decide who shall carry a firearm. *Boston, supra* at 227."

"To constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command." *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 36 (1972). *Commonwealth* v. *One 1987 Ford Econoline Van*, 413 Mass. 407, 411 (1992). In this case, the police commissioner was commanded to "reinstate [Kraft] to the position . . . of detective," that is, to restore Kraft to the position from which he had been unlawfully removed. The commissioner was not commanded, however, to put Kraft in a better, more protected, position than he had been in before he was discharged. As the cases and statutes on which the

judge relied establish, until his employment was terminated Kraft's right to carry a service revolver, and therefore to perform police functions requiring possession of such a weapon, was subject to the police commissioner's determination that he was fit to do so, and that discretionary decision could properly have been aided by mandated psychiatric or psychological testing. On reinstatement, Kraft's rights were subject to the same managerial prerogatives of the police commissioner. Thus, in the absence of a showing that, in requiring the psychological testing and in refusing recertification, the commissioner was engaged in pretext or device motivated by hostility toward the plaintiff rather than by a desire to fulfil his managerial responsibilities, see *Mayor of Somerville* v. *Caliguri,* 8 Mass. App. Ct. 335, 339 (1979), there was no inconsistency between the order of reinstatement and the commissioner's conduct, and contempt was not established.

It is apparent from the judge's memorandum that he was satisfied that the materials submitted to him did not constitute a *"prima facie* showing" that the police commissioner's insistence on psychological testing and his decision to deny recertification to the plaintiff had been motivated by concerns other than public safety. Stated another way, it is apparent that the judge concluded that, without assessing credibility but rather viewing the evidence contained in the affidavits and experts' reports in their light most favorable to the plaintiff, it could not fairly be inferred that the police commissioner's conduct was other than a good faith exercise of managerial discretion. The issue before the judge was not whether the plaintiff was fit to carry a service revolver. That decision was for the police commissioner to make. The issue before the judge was only whether the commissioner's decision was made in a good faith effort to fulfil his statutory managerial function. If it was, there was no contempt of the Superior Court order. If it was not, contempt was established. We think the judge was correct in determining that no prima facie showing of pretext or device had been made. If the submitted materials are accepted in their light most favorable to the plaintiff, it has not been shown that, in re-

quiring psychological testing or in relying on the department psychologist's report despite the challenges to it, the police commissioner was not concerned with public safety but instead was motivated by a desire to retaliate or by other unlawful considerations.

The plaintiff argues on appeal that the judge committed prejudicial error by not taking live testimony. We disagree. No contention was made below, nor is it made here, that, had the judge permitted live testimony, the plaintiff could have produced evidence in addition to the materials submitted to the judge that would have warranted a finding that the commissioner's conduct was unlawfully motivated. Indeed, after submitting the materials to which we have referred, the parties engaged in oral arguments and submitted briefs without any suggestion that live testimony would be appropriate.[1] The plaintiff waived any right he may have had to an evidentiary hearing involving live testimony. *Milano* v. *Hingham Sportswear Co.*, 366 Mass. 376, 379 (1974) ("A defendant in a contempt proceeding may, of course, waive his right to an evidentiary trial. . . . Such a waiver may result, in effect, from a failure to assert rights in the trial court in a manner which permits effective appellate review" [citations omitted]).

We are satisfied that the judge's order, affirmed in *Kraft I,* was a clear and unequivocal command, thus obviating the need for a "clarification" as sought by the plaintiff in lieu of, or in addition to, an adjudication of contempt. We also are satisfied, however, that the plaintiff has failed to show a "clear and undoubted disobedience" of that command.

---

[1] In a reply brief to the Superior Court dated December 6, 1991, Kraft complained that the police commissioner had made factual assertions in his brief that were unsupported by the submitted materials. He stated, "All of these allegations are false, or at the very least disputed by [the] plaintiff. No affidavit or other evidence has been submitted by the defendant to support these spurious allegations. If such factual assertions are relevant they must be resolved after evidentiary hearing." It is apparent from the judge's memorandum of decision that he did not rely on the referenced factual assertions but instead considered whether the submitted material made a prima facie showing of retaliation or any other form of contempt.

*United Factory Outlet, Inc.* v. *Jay's Stores, Inc., supra.* No contempt has been proven. Thus, the judge's order dismissing the plaintiff's petition was correct.

We turn very briefly to the police commissioner's cross appeal. The commissioner challenges the award of compensation for the period Kraft was on administrative leave, that is, from January 17, 1990, to August 19, 1991, when, as the judge concluded, the commissioner "lawfully removed [Kraft] from his street assignment." The commissioner argues that damages for that period should not have included compensation for loss of overtime or detail pay since such an award requires undue speculation. The commissioner had the opportunity to raise that question in his initial appeal (*Kraft I*) but did not do so and therefore waived a right of review at this stage of the proceedings.

*Judgment affirmed.*