LABOR RELATIONS COMMISSION *vs.* TOWN OF NATICK
& others
(and three companion cases[1]).

Middlesex.   October 8, 1975. — January 5, 1976.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Labor.   Municipal Corporations,* Police, Fire department, Collective
bargaining.

Subjects which are within the authority of a police chief under G. L.
   c. 41, § 97A, or a fire chief under c. 48, §§ 42, 43, 44, are proper
   subjects for collective bargaining, at least where such subjects fall
   within the scope of negotiations under § 6 of the collective bar-
   gaining statute, c. 150E. [437-438]
G. L. c. 150E requires that there be a single "chief executive officer"
   of a city or town for purposes of collective bargaining with munic-
   ipal employees. [438-439]
In the circumstances, the selectmen of a town were regarded as its
   "chief executive officer" as to all nonschool matters, and the Labor
   Relations Commission erred in directing the selectmen to designate
   the police chief and the fire chief to represent the town in bar-
   gaining with police officers and fire fighters under G. L. c. 150E.
   [440-442]

FOUR PETITIONS filed in the Superior Court, one on
September 18, 1973, one on October 30, 1973, and two
on November 1, 1973.

The cases were reserved and reported by *Vallely,* J., to
the Appeals Court.   The Supreme Judicial Court granted
a request for direct review.

[1] The companion cases are three petitions for review of decisions of
the commission.   Two involve petitions for review of a commission
decision concerning collective bargaining by certain Natick police
officers, filed, respectively, by the board of selectmen of Natick and
the chief of the Natick police department (since retired).   The other
petition for review is filed by the board of selectmen of Natick con-
cerning a commission decision with respect to collective bargaining
with Natick fire fighters.

*Jerry J. DiGeronimo,* Town Counsel, for the town of Natick.

*Alexander Macmillan (Robert B. McCormack & Joellen Bogdasarian* with him) for the Labor Relations Commission.

*Robert J. Canavan,* for International Brotherhood of Police Officers, amicus curiae, submitted a brief.

WILKINS, J.  These four cases concern the obligations of representatives of the town of Natick to bargain collectively with representatives of its police officers and fire fighters on subjects which, apart from the provisions of the collective bargaining statute (G. L. c. 150E), are within the authority of the chiefs of those departments.

Questions concerning the obligation of a town to bargain with representatives of its police officers have been before us recently in *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492 (1970), involving G. L. c. 41, § 97A (the so called "strong" chief law), and in *Chief of Police of Westford* v. *Westford,* 365 Mass. 526 (1974), involving G. L. c. 41, § 97 (the so called "weak" chief law).  Subsequent legislation, which we must now interpret, may affect the conclusions expressed in those opinions.  The effect of the statutory authority granted to a "strong" fire chief by G. L. c. 48, § 42, in relation to the collective bargaining rights of fire fighters has not been passed on by this court previously.  See, however, *Page* v. *Chief of the Fire Dep't of Gardner,* 361 Mass. 849 (1972), where the issue of the fire chief's powers under G. L. c. 48, § 42, was raised but not decided.

The parties agree, for the purposes of this case, that the town of Natick has accepted the "strong" police chief law (G. L. c. 41, § 97A) and comparable statutory provisions concerning its fire chief (G. L. c. 48, §§ 42, 43, 44).  Acceptance of those statutes raises the initial question whether matters thus assigned to the respective chiefs can be the subject of collective bargaining.  We conclude that under present law the town must bargain with its police officers and fire fighters concerning those

subjects. The next question is who must bargain on behalf of the town concerning subjects which are both within the area of a chief's responsibility and within the scope of permissible municipal collective bargaining. We reject the contention of the Labor Relations Commission (commission) that (1) the respective chiefs should bargain concerning employment conditions assigned to them by their respective "strong" chief statutes and (2) the selectmen should bargain only concerning other permissible bargaining subjects. We conclude that the selectmen of Natick are its chief executive officers for the purpose of collective bargaining with its police officers and fire fighters and that the selectmen are permitted to and must bargain concerning subjects which otherwise would be within the authority of the respective chiefs.

*The Police Department Cases.*

Three of these cases involve a decision of the commission concerning the obligations of the selectmen and the chief of police with respect to collective bargaining with a union representing certain police officers of the town.[2] The union as exclusive representative complained to the commission in February and April, 1972, that the town had engaged in a "prohibited practice" described in G. L. c. 149, § 178L.[3] In August, 1972, the commission issued its own complaint alleging that the selectmen had

---

[2] The union (Local 311, International Brotherhood of Police Officers) was not the bargaining agent for the chief, lieutenants, sergeants, special and reserve officers, and certain other employees of the police department.

[3] General Laws c. 149, § 178L, and associated sections (§§ 178G-178N), concerning collective bargaining by municipal employees, were inserted in the General Laws by St. 1965, c. 763, § 2, and repealed, effective July 1, 1974, by St. 1973, c. 1078, §§ 1, 7. Statute 1973, c. 1078, was enacted after the commission decisions which are involved in these cases. Statute 1973, c. 1078, by § 2, also inserted G. L. c. 150E, which deals with the collective bargaining rights of municipal and other governmental employees.

failed to appoint the police chief as their representative
for the purpose of collective bargaining and that, there-
fore, the town was not bargaining in good faith as
required by G. L. c. 149, §§ 178J and 178L. The town
answered that it had no obligation to appoint the chief of
police as its designated representative for collective
bargaining; that the chief of police was not a "municipal
employer" as defined in G. L. c. 149, § 178G; that the
board of selectmen had the sole right and duty to bargain
as the chief executive officer of the town; and that the
complaining union had refused to bargain with the board
of selectmen.

Hearings were held by the commission in the latter half
of 1972. The parties agreed that there had been negotia-
tions between the selectmen and the union and that the
chief of police had attended the collective bargaining
meetings but declined to participate as a party, "stating
that according to law he could not do so." The select-
men said that they were willing to come to terms
concerning matters falling within § 97A but that any
agreement would have to be subject to the exclusive
control and discretion of the chief "and could not be
subject to grievance-arbitration provisions."

On October 4, 1973, the commission issued a decision
and order, which we discuss more fully later in this
opinion. The commission ruled that the town had two
chief executive officers, within the meaning of G. L.
c. 149, § 178J, for the purposes of bargaining with the
union. "[W]ages, hours, benefits, tenure of employ-
ment, and the like" were the collective bargaining
responsibility of the selectmen. Collective bargaining as
to "duty assignments, vacation and leave matters" were
the exclusive responsibility of the chief of police, who, the
commission said, had been designated as a "municipal
employer" for bargaining purposes by the town's accept-
ance of G. L. c. 41, § 97A. The commission found that
the chief's refusal to bargain would constitute a viola-
tion of G. L. c. 149, § 178L, and that the selectmen's

failure to appoint the chief "as a co-representative" on the town's bargaining team was a failure to bargain collectively in good faith and a violation of G. L. c. 149, § 178L. The commission ordered the selectmen to appoint the chief of police as a member of the municipal employer's collective bargaining committee and ordered the selectmen and the chief to resume collective bargaining concerning wages, hours, and other conditions of employment.

The selectmen and the chief of police each filed separate petitions for review of the commission's decision. The day prior to the filing of those petitions for review the commission had filed a petition for enforcement of its order. These three cases were consolidated for hearing with the case involving the Natick fire fighters' collective bargaining rights. We turn next to a consideration of the origin and development of that case.

### *The Fire Department Case.*

The fourth case before us concerns the collective bargaining rights of the Natick fire fighters in light of the town's acceptance of G. L. c. 48, § 42, granting certain authority to the chief of the town's fire department. The proceedings before the commission followed much the same pattern as the proceedings involving the bargaining obligations of the selectmen and the police chief, although the agency proceeding involving the fire fighters' collective bargaining was commenced later and concluded earlier than the agency proceeding involving the police.

In December, 1972, the union representing the Natick fire fighters (Local 1707, International Association of Fire Fighters, AFL-CIO) complained to the commission that the town and its selectmen were not bargaining in good faith as required by G. L. c. 149, § 178L. The commission issued its own complaint alleging that the board of selectmen were the "Chief Executives of the Town of

Natick" and that they had refused to bargain in good faith with respect to rules and regulations promulgated by the fire chief. The town answered that it had not been asked to bargain concerning the fire chief's rules and regulations and that, in any event, the town had no duty to bargain over such matters because they were within the exclusive jurisdiction of the fire chief. The chief of the Natick fire department, who was permitted to intervene, took a different view of his status than the town's chief of police. He answered the complaint by stating that he, not the selectmen, had the authority to deal for the "municipal employer" under G. L. c. 48, § 42, and that the board of selectmen is not the chief executive officer for the purposes of collective bargaining with employees of the fire department.

The proceeding was presented to the commission on a stipulation of facts. The parties agreed that the selectmen had refused to bargain concerning "the matter of tours and shifts of duty, the work schedule and other matters relating to the assignment of personnel" because they contended that these subjects were under the exclusive control of the fire chief and were not required subjects of negotiations.

In its decision of August 20, 1973, the commission ruled, although it called its conclusion a finding, that the town's adoption of G. L. c. 48, § 42, constituted a designation by the town of the fire chief to deal with municipal employees and that, therefore, the fire chief was a "municipal employer" as defined in G. L. c. 149, § 178G. The commission further ruled that rules and regulations of the fire chief concerning "tours and shifts of duty, work schedules and other patterns relating to the assignment of personnel" are "conditions of employment" within the meaning of G. L. c. 149, § 178H. The commission ruled that the selectmen should have appointed the fire chief to the municipal employer's collective bargaining committee, ordered them to do so, and directed that the selectmen and the fire chief resume

collective bargaining with the bargaining representative of the town's fire fighters.

The selectmen, but not the fire chief, filed a petition for review of the commission's decision. After the three police chief cases and the fire chief case were consolidated for hearing in the Superior Court, the cases were reserved and reported, at the request of the parties, without decision on the pleadings and an "agreed statement of facts." We granted the parties' joint application for direct appellate review of all four cases.

Because the orders of the commission which are involved in these cases direct municipal officials only with respect to their future conduct, we are considering these cases in terms of the legislation which is now in effect. Thus, for example, we do not pass on the question whether prior to July 1, 1974 (the effective date of St. 1973, c. 1078, § 2, inserting G. L. c. 150E), the regulations of the chief of the Natick fire department concerned subjects which were within the scope of collective bargaining by the selectmen.

### The Scope of Bargaining.

We have no hesitancy in concluding that subjects which are within the authority of the respective chiefs are proper subjects for collective bargaining. General Laws c. 150E, § 7, inserted by St. 1973, c. 1078, § 2 (effective July 1, 1974 [see St. 1973, c. 1078, § 7]), provides expressly that "[i]f a collective bargaining agreement reached by the employer and the exclusive representative contains a conflict between matters which are within the scope of negotiations pursuant to section six of this chapter and . . . the regulations of a police chief pursuant to . . . [G. L. c. 41, § 97A, or] the regulations of a fire chief . . . pursuant to . . . [G. L. c. 48], . . . the terms of the collective bargaining agreement shall prevail." See St. 1969, c. 341, and St. 1970, c. 340, amending G. L. c. 149, § 178I, for prior law concerning the over-

riding of the regulations of a "strong" police or fire chief.[4] We think the legislative intent is clear. If rules and regulations of the respective chiefs may be overridden in the bargaining process, plainly there is a right to bargain on topics covered by those regulations which involve "terms and conditions of employment" (G. L. c. 150E, § 6).[5]

## The Town's Bargaining Representative.

We believe that the Legislature intended that the board of selectmen be the sole representative of the town in bargaining with police officers and fire fighters under G. L. c. 150E. Section 6 of G. L. c. 150E requires the "employer" to meet with the appropriate exclusive representative to negotiate on subjects within the scope of collective bargaining. Section 1 of G. L. c. 150E defines an "employer" for municipal purposes as a city or town "acting through its chief executive officer, and any individual who is designated to represent [the town] and act in its interest in dealing with public employees . . . ." We reject the suggestion of the commission that Natick has multiple "chief executive officers" — the chief of the police or fire department, as the case may be, as to his statutory area of authority and the selectmen as to the balance of the matters within the scope of collective bargaining. The definition of an employer speaks of a

---

[4] It was suggested in argument that the 1969 statute was passed to reverse the lower court decision, which we affirmed in this respect in *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492 (1970).

[5] No question is presented here whether there are certain matters still within the exclusive control of the police and fire chiefs because they are subjects which are beyond the scope of negotiations under the collective bargaining statute (see now G. L. c. 150E, § 6). Cf. *School Comm. of Hanover* v. *Curry*, 3 Mass. App. Ct. 151, 157-158 (325 N.E.2d 282, 286-287), further appellate review granted, 367 Mass. 913 (1975), dealing with an area held to be within the exclusive prerogative of the school committee and thus not subject to arbitration.

single "chief executive officer." There is no explicit recognition that there may be more than one locus of a municipality's bargaining authority.

The bifurcated negotiations contemplated by the commission do not present an obvious, desirable format for collective bargaining. Even assuming that the areas of respective responsibility can be assigned easily between the selectmen and the particular chief, there remains the fact that bargaining often involves "give and take" on various matters in negotiation. The selectmen and a chief may disagree on which of them should make concessions in order to come to an agreement, and, if they do disagree, the negotiation process is complicated. Moreover, chiefs as negotiators might have a conflict of interest because their own salaries may be affected by the salaries negotiated in the bargaining process.[6]

The commission argues that, on occasion, dual public employers have been found to exist under the laws of other States, and that we should not be reluctant to accept such a solution here. See *County of Ulster* v. *CSEA Unit of the Ulster County Sheriff's Dep't, Ulster County CSEA Chapter,* 37 App. Div. 2d 437, 439 (N.Y. 1971); *Wayne County Civil Serv. Comm'n* v. *Wayne County Bd. of Supervisors,* 22 Mich. App. 287, 298-299 (1970), rev'd on this point in 384 Mich. 363 (1971); *Costigan* v. *Philadelphia Fin. Dep't Employees Local 696, AFSC&M Employees, AFL-CIO,* 462 Pa. 425, 434-437 (1975). We believe, however, that the Legislature did not intend that there be dual chief executive

---

[6] For example, under G. L. c. 48, § 57G, as amended by St. 1974, c. 415, § 1, if that section is accepted by the municipality, a police or fire chief's salary must be established at a proportion in excess of that of permanent, full time fire fighters or police officers, as the case may be. Even if no mandated proportion exists, the salary of police officers and fire fighters will have some effect on their chiefs' salaries as a practical matter. The fact that the chiefs would not negotiate on matters of salary does not mean that they could not have a significant, indirect influence on salaries.

officers in a town such as Natick. Surely by tradition and in practice the selectmen of a town are regarded as its chief executive officers as to all nonschool matters.[7]

We are reluctant to interpret G. L. c. 150E as compelling dual management representation where a reasonable solution can be found which is consistent with the statutory reference to a "chief executive officer." Indeed, the commission itself has not maintained a consistent position on this subject. In its complaints involved here, the commission alleged that the selectmen were the chief executives of the town "within the meaning of [G. L. c. 149, §§ 178G-178N]." In the fire fighters' proceeding, the commission made no reference to the fire chief and simply charged the selectmen with a failure to bargain. In the police officers' proceeding, the commission contended that the selectmen "failed to appoint" the police chief "as their designated representative for the purposes of collective bargaining." The complaints make no suggestion of multiple employers, and the commission's brief makes no attempt to distinguish the result under the former statute (G. L. c. 149, §§ 178G-178N) from the result under G. L. c. 150E.[8]

We find no support for the commission's position that by acceptance of § 97A and G. L. c. 48, § 42, the town designated the respective chiefs to represent it and to act in the town's interest in dealing with public employees

---

[7] We express no view on who the chief executive officer is in a municipality which has a city or town manager. The issue will never be important if there is an agreement as to the municipality's representative for bargaining purposes among all persons who might be regarded as a "chief executive officer."

[8] The brief filed as a friend of the court by the International Brotherhood of Police Officers "regretfully" supports the conclusion that authority is divided between the police chief and the selectmen. The brief expresses, however, a preference (but no argument) for the result we reach in this case, saying, "We devoutly wish that the Selectmen had the authority to negotiate a complete comprehensive collective bargaining package with its police employees' union."

(but only as to certain matters). Apparently, the town accepted these acts long before municipal collective bargaining was provided for in the General Laws. In any event, these acts have nothing to do with (and indeed tend to run counter to the idea of) bargaining concerning employees' "working conditions." Assuming that the designation of a bargaining representative of a town may be made by a town meeting, and not exclusively by the town's chief executive officer, the short but complete answer is that the Natick town meeting has never made such a designation.

The commission's position seems to be dictated by a sense that the Legislature must have intended to preserve the independent authority of the "strong" chiefs. We disagree. The fact that the Legislature has provided expressly that the negotiated agreement prevails over conflicting by-laws, regulations, and statutes (see G. L. c. 150E, § 7) indicates that the statutory goal of achieving entirely open, conclusive negotiations between the chief executive officer (or a selected representative) and the employees' representative is preeminent. Section 7 of G. L. c. 150E lists numerous provisions of the General Laws which will be overridden by a bargaining agreement. Some of these are statutes, like G. L. c. 41, § 97A, and G. L. c. 48, § 42, which are effective in a municipality only when accepted. See, e.g., G. L. c. 41, §§ 111, 111A, 111D, 111G, 111K, and 111L, all dealing with vacations. Some of the statutes which may be overridden in the bargaining process involve considerable protection to employees. See, e.g., G. L. c. 41, §§ 108D, 108E, 108F, and 108G, concerning minimum annual salaries for fire fighters and police officers, respectively, and G. L. c. 41, § 111F, concerning leave without loss of pay for a police officer or fire fighter because of incapacity due to injury sustained in the performance of his duty without his own fault. Others involve matters of local choice which can be as fully important as a locally accepted "strong" chief statute. See, e.g., G. L. c. 40,

§ 21A, concerning municipal by-laws with respect to hours, days, and weeks of work and holiday, vacation, and sick leave, and G. L. c. 40, § 21B, permitting the establishment of a personnel relations review board which may adjust grievances. We believe that, by enacting G. L. c. 150E, § 7, the Legislature intended to change the result in circumstances similar to those existing in the *Dracut* case, not just providing the "strong" chief regulations may be overridden in the bargaining process but also providing that the selectmen may negotiate conclusively on subjects otherwise assigned to the respective chiefs.

There may be situations in governmental employment where a single chief executive officer cannot be discerned. The commission points to uncertainties, particularly as to certain county employees.[9] The fact, however, that dual or multiple "chief executive officers" may be the only solution for certain government employees does not require such a result in the case of the Natick police officers and fire fighters.

We see no basis for the commission's order directing the selectmen to appoint the respective chiefs to the town's collective bargaining committee. The record does not show what authority and function that town committee has. It is not a committee required by statute. In its brief, the town states that the committee is an advisory one. The commission has no authority to direct the town in this way concerning membership on such a committee. Nor does it have authority to direct a town or its selectmen to designate a particular person as its bargaining representative.

---

[9] In *County of Ulster* v. *CSEA Unit of the Ulster County Sheriff's Dep't, Ulster County CSEA Chapter*, 37 App. Div. 2d 437, 439 (N.Y. 1971), the court said that "a finding of joint employers is rare" but that such a finding was required by "practical necessity" in the circumstances of that case. Joint employers have been recognized in private employment. See *Ace-Alkire Freight Lines, Inc.* v. *NLRB*, 431 F.2d 280, 282 (8th Cir. 1970), and cases cited.

## Conclusion.

The commission's petition for enforcement of its order as to collective bargaining with the Natick policemen must be dismissed. The orders entered by the commission in the police and fire fighter proceedings must be set aside as in excess of the commission's authority, and new orders should be entered directing the selectmen to bargain on all matters within the scope of collective bargaining under G. L. c. 150E, § 6. Appropriate judgments are to be entered in the Superior Court.

*So ordered.*