MASSACHUSETTS PROBATION ASSOCIATION *vs.*
COMMISSIONER OF ADMINISTRATION & others.[1]

Suffolk.    May 7, 1976. — July 12, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Labor.    Public Employment.    Probation Officer.    Commonwealth,* Collective bargaining.    *Words,* "Department," "Public employer," "Public employee."

In light of the legislative history relating to public sector collective bargaining and a reading of G. L. c. 150E in its entirety, only those State employees who are employed in the executive branch of government are "public employees" within the meaning of c. 150E, § 1; inasmuch as probation officers are employees of the judicial branch of government, they are not covered by the collective bargaining provision of c. 150E. [656-663]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on April 1, 1974.

The suit was reserved and reported by *Wilkins,* J.

*Brian T. Callahan (Mitchell B. Corbett* with him) for the Massachusetts Probation Association.

*Michael F. Farrington,* Special Assistant Attorney General, for the Committee on Probation & another.

*Mark M. Grossman,* Special Assistant Attorney General (*William R. Blane* with him) for the Commissioner of Administration.

*Joellen D'Esti Bogdasarian* for the Labor Relations Commission.

*Warren H. Pyle* for Alliance, AFSCME-SEIU, AFL-CIO.

---

[1] The Committee on Probation, the Commissioner of Probation, the Labor Relations Commission, and the Alliance, AFSCME-SEIU, AFL-CIO.

HENNESSEY, C.J.   On March 3, 1976, the plaintiff filed an amended petition[2] for declaratory judgment (G. L. c. 231A) in the Supreme Judicial Court for the county of Suffolk asking the court to determine whether probation officers are "public employees"[3] within the meaning of the recently enacted public employee collective bargaining statute (G. L. c. 150E, inserted by St. 1973, c. 1078, § 2). Further, if it is found that probation officers are covered under c. 150E, thereby entitling them to collective bargaining rights, the plaintiff seeks a determination as to who is the "public employer"[4] of these employees for purposes of collective bargaining. The case was reserved and reported to the full court on a statement of agreed facts by a single justice on March 29, 1976.

We conclude as a matter of statutory interpretation that probation officers do not come within the definition of "public employees" as set forth in c. 150E, § 1, and, therefore, we do not reach the question of who is the "public employer" of probation officers. Also, in light of our conclusion, we need not address the constitutional argument raised by the defendants, the Committee on Probation and

---

[2] The plaintiff, in its original petition for declaratory relief, filed on April 1, 1974, raised the question whether probation officers were entitled to collective bargaining rights under the then existing law covering State employees, G. L. c. 149, § 178F, which has since been repealed by St. 1973, c. 1078, § 1, effective July 1, 1974.

[3] "Employee" or "public employee" is defined in G. L. c. 150E, § 1, inserted by St. 1973, c. 1078, § 2, and as most recently amended by St. 1975, c. 689, § 11, to include "any person employed by a public employer except elected officials, appointed officials, members of any board or commission, representatives of any public employer, including the heads, directors and executive and administrative officers of departments and agencies of any public employer, and other managerial employees or confidential employees, and members of the militia or national guard and employees of the [labor relations] commission, and officers and employees within the departments of the state secretary, state treasurer, state auditor and attorney general . . . ."

[4] General Laws c. 150E, § 1, defines "employer" or "public employer" as "the commonwealth acting through the commissioner of administration, or any county, city, town or district acting through its chief executive officer, and any individual who is designated to represent one of these employers and act in its interest in dealing with public employees . . . ."

the Commissioner of Probation, that the application of c. 150E to probation officers would constitute a violation of the separation of powers doctrine embodied in art. 30 of the Declaration of Rights of the Massachusetts Constitution.

The relevant facts as appearing in the record may be summarized as follows. On October 25, 1968, United City Employees Local 285 of the Service Employees International Union filed a certification petition with the Labor Relations Commission (the Commission) pursuant to the municipal employee collective bargaining law, G. L. c. 149, §§ 178G-178N (since repealed by St. 1973, c. 1078, § 1), seeking designation as the exclusive bargaining agent of "[a]ll Suffolk County Probation Officers." On January 16, 1969, the plaintiff filed a similar petition seeking certification as the representative of "all probation officers employed by the District Courts and Superior Courts in the Counties of the Commonwealth." After formal hearings were held, the Commission dismissed both petitions on the basis that the then controlling municipal employee collective bargaining law, G. L. c. 149, §§ 178G-178N, did not apply to probation officers, because they were State and not county employees. Nevertheless, Local 285 and the plaintiff were offered the opportunity to amend their certification petitions and to proceed under the then existing State employee collective bargaining law (G. L. c. 149, § 178F, since repealed by St. 1973, c. 1078, § 1, effective July 1, 1974).

At a supplemental hearing on the amended petitions in October, 1970, the parties, including the plaintiff, Local 285, the Commissioner of Probation, and the Committee on Probation, stipulated that, for the limited purposes of the pending case only, the Commonwealth of Massachusetts was the employer of probation officers. The Commission, in a supplemental decision, directed that an election be held whereby "Probation Officers in the employ of the Judicial Department of the Commonwealth" would be entitled to elect an employee representative for collective bargaining purposes under G. L. c. 149, § 178F. Judicial re-

view of the Commission's decision was not pursued by either the Commissioner of Probation or the Committee on Probation.

The plaintiff, having been elected by secret ballot, was certified on January 15, 1971, as the exclusive collective bargaining agent for the probation officers. Following approximately two months of negotiations during the summer of 1973 between the plaintiff and the Commissioner of Probation,[5] a contract was submitted to the Committee on Probation[6] for its approval.

On February 6, 1974, the Chief Justice of the Superior Court, in his capacity as chairman of the Committee on Probation, informed the plaintiff that the Committee did not consider itself the employer of probation officers, notwithstanding the contrary decision of the Commission, and, therefore, it would not continue to bargain with the plaintiff. In response, the plaintiff filed a petition for declaratory judgment. See note 2 *supra.*

On July 1, 1974, the State employee collective bargaining act, G. L. c. 149, § 178F,[7] was repealed and superseded by G. L. c. 150E, which gave public employees of the Commonwealth, as defined in c. 150E, § 1, the right to bargain collectively over wages, hours, standards of productivity and performance, and other terms and conditions of employment. See G. L. c. 150E, §§ 2, 6. See also Sherry, 1974 Ann. Survey Mass. Law § 2.12.[8] The Commission, by virtue

---

[5] The Commissioner of Probation has "executive control and supervision of the probation service" and is appointed for a term of six years by the Committee on Probation. G. L. c. 276, § 98.

[6] The Committee on Probation is composed of the Chief Justice of the Superior Court, the Chief Justice of the Probate Court, the Chief Justice of the Municipal Court of the City of Boston, the Chief Justice of the District Courts, and two persons appointed by the Chief Justice of the Supreme Judicial Court. G. L. c. 276, § 99A.

[7] The repealed statute, G. L. c. 149, § 178F (6), granted State employees, unlike municipal employees (see c. 149, § 178H (1)), only the right to bargain collectively with respect to conditions of employment.

[8] Previously, we examined portions of c. 150E in *Boston Teachers Local 66* v. *School Comm. of Boston, ante,* 455 (1976), *Director of the Div. of Employee Relations of the Dep't of Administration & Fin.*

of the authority vested in it by G. L. c. 23, § 9R, as most recently amended by St. 1973, c. 1078, § 2A, and pursuant to its mandate under c. 150E, § 3, to prescribe rules and regulations and to establish procedures for the determination of appropriate bargaining units, suggested standards for ten Statewide bargaining units for Commonwealth employees. Although the plaintiff was notified of the hearings relating to the Commission's proposed amendment to its rules and regulations, it did not attend. On March 3, 1975, the Commission issued its rule establishing a ten-unit bargaining structure for State employees.

On March 25, 1975, a petition was filed by the Alliance, AFSCME-SEIU, AFL-CIO (the Alliance) seeking certification as the exclusive representative of unit 8 employees (social and rehabilitative employees) for purposes of collective bargaining. Thereafter, unit determination proceedings were held, but the plaintiff, despite notification, did not participate. The Commission, on October 6, 1975, issued a decision directing that a representation election be conducted for unit 8 employees. Furthemore, the Commission, in view of the pending litigation concerning the status of probation officers, adopted the stipulation agreed to by the Alliance and the Director of the Division of Employee Relations, the designee of the Commissioner of Administration, which provided that, to the extent that probation officers were employees within the meaning of c. 150E, they were to be included in unit 8. Probation officers were permitted to vote in the unit 8 election, subject to the challenge of any of the parties.

A representation election was conducted in the fall of 1975, and the verification and tabulation of ballots commenced on November 17, 1975. The probation officers' votes were not tabulated because of a challenge by the Commissioner of Administration, and, in addition, all probation officers were instructed by counsel to attach a statement to their ballots indicating that their vote was cast

v. *Labor Relations Comm'n, ante,* 162 (1976), and *Labor Relations Comm'n* v. *Natick,* 369 Mass. 431 (1976).

subject to the petition for declaratory relief that is now before us. The only union making a proper showing of interest and appearing on the unit 8 ballot was the Alliance. Thus, on February 4, 1976, the Commission certified the Alliance[9] as the exclusive representative of all unit 8 employees for the purposes of collective bargaining under c. 150E.

The question before us, whether c. 150E is applicable to probation officers, is one of first impression. We had no occasion to consider this issue under the prior State employee collective bargaining law, G. L. c. 149, § 178F, nor have we examined the definitional section (§ 1) of c. 150E in our previous decisions (see note 8 *supra*). There is little agreement among the parties as to the applicability of c. 150E to probation officers and the identity of the employer for purposes of collective bargaining if they are covered. The plaintiff contends that probation officers are entitled to collective bargaining rights under the statute and that the Committee on Probation is the only logical employer because of the degree of control exercised by the Committee over the hiring, firing, and standards of performance of probation officers. Of the five named defendants, see note 1 *supra*, the Commissioner of Administration, the Committee on Probation and the Commissioner of Probation argue that c. 150E was not intended to cover probation officers.[10] The Commission and the Alliance adhere to the view that probation officers are employees within the meaning of the statute and that the Commis-

---

[9] We do not consider, contrary to the implication in the Commission's brief, that this case raises any question as to the validity of the Commission's certification of the Alliance as the bargaining agent for probation officers.

[10] The Commissioner of Probation and the Committee on Probation argue that, if probation officers are covered, the statute would violate the separation of powers doctrine. If no constitutional infirmity is found, they claim that the justices of the courts, not the Committee on Probation, must be considered the employer, since the justices exercise day-to-day control and supervision over the activities of probation officers. The Commissioner of Administration contends that he would be the employer of probation officers if they are "public employees."

sioner of Administration is the sole employer under c. 150E, § 1, of State public employees, including probation officers. We believe that this divergence of opinion among the parties may reflect the somewhat ambiguous wording of the statute and the rather scant legislative history. Nevertheless, we are of the opinion that, despite this lack of clear guidance, a sensible reading of the whole statute in light of the history of public employee collective bargaining in this Commonwealth compels the conclusion that probation officers are not entitled to collective bargaining rights under c. 150E.

In deciding the present case, we acknowledge, as all the parties apparently concede, that probation officers are employees of the judicial branch of government. The Committee on Probation, see note 6 *supra,* consists of members of the judiciary. This Committee appoints the Commissioner of Probation, who has responsibility, in conjunction with the Committee, for establishing standards for probation work and for promulgating rules concerning supervision, casework, record keeping, accounting and caseload. G. L. c. 276, §§ 99, 99A. The Committee, in consultation with the Commissioner, sets standards for the appointment of probation officers, G. L. c. 276, § 99A, and the Commissioner is empowered to qualify or disqualify an applicant for the position of probation officer. G. L. c. 276, § 99. Probation officers are appointed to their positions by the justices of the courts in which they serve, and they may be removed, discharged or demoted for cause by the justices of the court making the appointment, subject to the written approval of the Committee on Probation. G. L. c. 276, § 83. The compensation schedule of probation officers of all courts is established by the Legislature, G. L. c. 276, §§ 83, 99B, but, as we have noted in the past, their duties are closely connected with the judicial work of the court. See *LaChapelle* v. *United Shoe Mach. Corp.,* 318 Mass. 166, 170 (1945); *Catheron* v. *County of Suffolk,* 227 Mass. 598, 602 (1917). In practice, as well as by statute, both day-to-day and ultimate control over probation officers is vested in the judiciary, including the justices of

the courts where the probation officers serve (see c. 276, §§ 85 and 85A), the Committee on Probation, and its appointee, the Commissioner of Probation (see c. 276, §§ 98, 99, 99A).

Accordingly, we recognize that the instant case of necessity presents the question whether judicial employees are "public employees" as defined in c. 150E.[11] We turn now to a consideration of this question.

In determining if judicial employees come within the scope of c. 150E, we begin by looking at the definition of "public employee" set forth in c. 150E, § 1, see note 3 *supra.* Judicial employees, including probation officers, are neither expressly excluded nor included as in other jurisdictions.[12] However, "public employee" is not defined in c. 150E, § 1, to include all public employees in the Commonwealth, but rather only those employees who are employed by a "public employer."[13] Therefore, we must also consider the c. 150E, § 1, definition of "public employer" (see note 4 *supra*).

---

[11] We need not at this time consider what other employee groups fall within the category of judicial employees. We note, however, that the Commission has determined that Middlesex County Superior Court officers are employed by the sheriff of Middlesex County for the purposes of c. 150E. Middlesex County Commissioners and AFSCME, AFL-CIO, Mass. L.R.C. No. MCR-2215, 2 M.L.C. 1225 (December 4, 1975).

[12] Judicial employees are specifically excluded in Iowa (Iowa Code Ann. § 20.4 [7] [1976]); Maine (Me. Rev. Stats. Ann. tit.26, § 979-A [5], [6] [1974]); and Vermont (Vt. Stat. Ann. tit.3, § 902 [7] [1975]), whereas they are included in Connecticut (Pub. Act No. 75-566, § 1 [a]). In Wisconsin (Wis. Stat. Ann. § 111.81 [15] [1974]), the State Employment Labor Relations Act applies only to employees in the classified service of the State.

[13] Chapter 150E is similar in many respects to a bill (1973 House Doc. No. 6194) introduced by a special collective bargaining commission (Mendonca commission) which was created to recommend changes in the statutes governing public employee collective bargaining. See *Director of the Div. of Employee Relations of the Dep't of Administration & Fin.* v. *Labor Relations Comm'n, ante,* 162, 167-168 (1976). The Mendonca commission bill defined "public employee" to include "any person employed by a public employer except elected and appointed officials and such other employees as may be excluded from coverage in ... [the section defining 'public employer']." 1973 House Doc. No. 6194, app. B.

Chapter 150E, § 1, defines "public employer" as "the commonwealth acting through the commissioner of administration [or his designee],"[14] and thereby relieves us of the task, encountered in other jurisdictions,[15] of determining who is the employer. In addition, contrary to the plaintiff's suggestion, it appears that the "public employer," as so defined in c. 150E, § 1, is the sole State employer representing management at the bargaining table.[16] Cf. *Labor Relations Comm'n* v. *Natick,* 369 Mass. 431 (1976). Therefore, probation officers, being employees of the judicial branch of State government, must be employed by the "commonwealth acting through the commissioner of administration" if they are to be covered by c. 150E.

We agree with the Commissioner of Administration's observation that there are two possible interpretations of the above definition of "public employer." The first is that the Legislature may have intended to authorize the Com-

[14] As noted in *Director of the Div. of Employee Relations of the Dep't of Administration & Fin.* v. *Labor Relations Comm'n, ante,* 162, 164 n.3, the Director of the Division of Employee Relations, a division within the Executive Office for Administration and Finance which is headed by the Commissioner of Administration, became the "employer" of State "public employees" under c. 150E, § 1, as of July 1, 1974.

[15] See, e.g., *Sweet* v. *Pennsylvania Labor Relations Bd.,* 457 Pa. 456 (1974), reversing 12 Pa. Commonwealth Ct. Rep. 358 (1974). See also Comment, A Definitional Problem with the Pennsylvania Public Relations Act: "The Employer," 12 Dusquesne L. Rev. 304 (1973).

[16] We have discovered only one other State statute that specifically authorizes an executive department to perform the employer functions at the bargaining table with all covered State employees. Wisconsin defines the "employer" as the "state of Wisconsin.... [T]he state shall be considered as a single employer and employment relations policies and practices throughout the state service shall be as consistent as practicable. It is the responsibility of the executive branch to negotiate collective bargaining agreements, and to administer such agreements.... The department of administration is responsible for the employer functions of the executive branch under this section ...." Wis. Stat. Ann. § 111.81 (16) (1974). As mentioned in note 12 *supra,* Wisconsin's statute applies only to employees in the classified service (civil service employees). The fact that the definition of "public employer" in c. 150E resembles that used in Wisconsin may not be merely coincidental, for the Mendonca commission, see note 13 *supra,* studied the Wisconsin legislation before making its proposals. See 1971 House Doc. No. 5235.

missioner of Administration to bargain with all employees of the Commonwealth, including legislative, executive, and judicial employees. Alternatively, because the Commissioner of Administration is an officer within the executive branch of government (see G. L. c. 7, § 4), the Legislature may have intended c. 150E to cover only executive employees. It is this second construction of c. 150E that we adopt for the reasons outlined below.

In reaching this conclusion, we note that the Executive Office for Administration and Finance is an executive department of the government of the Commonwealth and it serves directly under the Governor (see G. L. c. 7, § 2). Its responsibilities are defined in G. L. c. 7, § 3, set forth below.[17] Furthermore, the Commissioner of Administration, who serves at the pleasure of the Governor, acts as the executive officer of the Governor in matters "pertaining to the financial, administrative, planning and policy co-ordinating functions and affairs of the departments, commissions, offices, boards, divisions, institutions and other agencies within the executive department of the government of the commonwealth." G. L. c. 7, § 4. Because the statutory authority vested in the Executive Office for Administration and Finance and its Commissioner extends primarily, if not exclusively, to the executive branch of government, it would be anomalous to interpret c. 150E, § 1, as covering State employees not employed in the executive branch of government.

---

[17] General Laws c. 7, § 3, as appearing in St. 1962, c. 757, § 4, provides: "The executive office for administration and finance shall serve as the principal agency of the executive department of the government of the commonwealth for the following purposes:

"(1) Developing, co-ordinating, administering and controlling the financial policies and programs of the commonwealth;

"(2) Supervising the organization and conduct of the business affairs of the departments, commissions, offices, boards, divisions, institutions and other agencies within the executive department of the government of the commonwealth;

"(3) Developing new policies and programs which will improve the organization, structure, functions, economy, efficiency, procedures, services and administrative practices of all such departments, commissions, offices, boards, divisions, institutions and other agencies."

We also find it instructive to examine the prior State employee collective bargaining statute, G. L. c. 149, § 178F, which was repealed by St. 1973, c. 1078, § 1, and superseded by c. 150E. General Laws c. 149, § 178F (1), as appearing in St. 1967, c. 774, defined "employee" as "any employee of the commonwealth assigned to work in any department, board, commission or other agency thereof ..." and "employer" as "the commonwealth, acting through a department or agency head as agent...." Although it is not necessary to our holding in the present case to determine the exact scope of G. L. c. 149, § 178F, we observe that the words "employer" and "employee" were defined in terms that closely resemble those used by the Legislature in the above cited statutes (G. L. c. 7, §§ 3, 4 — "departments, commissions, offices, boards, divisions, institutions and other agencies") when referring to entities within the executive branch of government. Cf. *Yont* v. *Secretary of the Commonwealth*, 275 Mass. 365, 367-368 (1931) (interpreting "departments" to mean only those in the executive branch of government and not "the three grand departments of government"). In view of the similar phraseology in the statutes (G. L. c. 7, §§ 3, 4, and G. L. c. 149, § 178F [1]) and the unlikelihood that the word "department," as used in G. L. c. 149, § 178F (1), would mean the various executive departments (such as the Department of Public Works) and also include the three branches of government (executive, judicial and legislative), we believe that it is reasonable to consider that the prior State employee collective bargaining statute, G. L. c. 149, § 178F, applied only to executive employees.

Although G. L. c. 149, § 178F, was repealed by St. 1973, c. 1078, § 1, there is no indication that the Legislature intended, when enacting c. 150E, to broaden the coverage of the public employee collective bargaining statute.[18]

---

[18] In an interim report filed by the Mendonca commission (note 13 *supra*), it was proposed that "employer" should be defined as "the Commonwealth, acting through representatives of the Commissioner of Administration and/or through a department or agency head as agent ...." A dissent was filed by two members of the Commission who ar-

Rather, the legislative history reveals that the definition of "public employer" was revised in an attempt to strengthen the hand of management at the bargaining table, see 1971 House Doc. No. 5235, and to provide centralized leadership and direction for collective bargaining at the State level.[19] Cf. Labor Relations Commission: Notice of Determination of State Employee Bargaining Units, 1 M.L.C. 1318, 1325 (March 3, 1975). Since the scope of bargaining for State employees was altered under the new law to include wages, hours, and standards of productivity and performance, as well as conditions of employment (compare G. L. c. 150E, § 6, with G. L. c. 149, § 178F [6]), it was reasonable, in light of the Commissioner of Administration's role in fiscal matters, for the Legislature to designate "the commonwealth acting through the commissioner of administration" as the single public employer. Therefore, the statutory change made in the definition of "public employer" reflects, not an intent to broaden the coverage of the act to include nonexecutive State employees, but, rather, an effort to promote a rational format for collective bargaining. Cf. *Labor Relations Comm'n v. Natick*, 369 Mass. 431 (1976).

Not only do we find support for our conclusion that judicial employees are not entitled to collective bargaining rights under c. 150E on the basis of our analysis of the definitions set forth in that statute and our examination of the legislative history relating to State public employee collective bargaining, but we also note that a reading of c. 150E in its entirety demonstrates that judicial employees, including probation officers, are not "public employees" within the meaning of the act.

Interpreting c. 150E "so as to constitute a harmonious whole," *Director of the Div. of Employee Relations of*

gued that "the employer" should be the Commonwealth acting through "Cabinet Secretaries." See 1971 House Doc. No. 5235.

[19] Under G. L. c. 149, § 178F, a fragmented, department based bargaining system existed, which included over 200 bargaining units. Labor Relations Commission: Notice of Determination of State Employee Bargaining Units, 1 M.L.C. 1318, 1325 (March 3, 1975).

*the Dep't of Administration & Fin.* v. *Labor Relations Comm'n, ante,* 162, 172 (1976), we discover that § 7 of c. 150E enumerates those statutes which are to be overridden by a collective bargaining agreement in the case of conflict. Cf. *Chief of Police of Westford* v. *Westford,* 365 Mass. 526, 528 n.1 (1974). We believe that § 7, when read in conjunction with the definitional section (§ 1), indicates that probation officers, if not all judicial employees, are excluded under c. 150E, for those statutes (see G. L. c. 276, §§ 83-99C) which govern the salaries and terms and conditions of employment of probation officers are not listed in c. 150E, § 7 (a)-(j). Furthermore, the statutes relating to State employees which are specified in § 7 apply only to employees clearly within the executive branch.

In sum, we conclude that probation officers, as employees of the judiciary, are not "public employees" within the meaning of c. 150E. Having examined c. 150E in its entirety and in the context of the evolving history of public sector collective bargaining in the Commonwealth, we believe that the definitions of "public employee" and "public employer," as used in c. 150E, § 1, convey a legislative intent to exclude nonexecutive employees from coverage under the act.[20] In light of our statutory analysis, we express no opinion as to any constitutional issue.[21]

[20] Other jurisdictions which have examined the applicability of public sector collective bargaining acts to judicial employees offer us little guidance in interpreting c. 150E, since Massachusetts's statutory framework is unique. See, e.g., *Judges of the 74th Judicial Dist.* v. *Bay County,* 385 Mich. 710 (1971); *State ex rel. O'Leary* v. *Missouri State Bd. of Mediation,* 509 S.W.2d 84 (Mo. 1974); *In re: Salaries for Probation Officers of Bergen County,* 58 N.J. 422 (1971); *McCoy* v. *Helsby,* 28 N.Y.2d 790 (1971); *Matter of Kleinman* v. *McCoy,* 19 N.Y.2d 292 (1967). Nevertheless, we note that the Advisory Commission on Intergovernmental Relations (ACIR) recommends that legislative and judicial employees be excluded from coverage under its proposed State Public-Labor Management Relations Act. See ACIR State Legislative Program at 77, 90 (1975).

[21] For a discussion of separation of powers and collective bargaining rights of judicial employees, see e.g., *Livingston County* v. *Livingston Circuit Judge,* 393 Mich. 265 (1975); *State ex rel. O'Leary* v. *Missouri State Bd. of Mediation,* 509 S.W.2d 84 (Mo. 1974); *In re: Salaries for Probation Officers of Bergen County,* 54 N.J. 422 (1971); *Zylstra* v. *Piva,* 85 Wash. 2d 743 (1975).

The case is remanded to the county court for entry of a judgment in accordance with this opinion.

*So ordered.*