Holyoke Police Relief Assn. *v.* Mayor of Holyoke.

HOLYOKE POLICE RELIEF ASSOCIATION *vs.* MAYOR OF HOLYOKE.

Hampden. October 7, 1970. — December 10, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Police. Municipal Corporations,* Employees, Vacations. *Words,* "Weeks."

The "weeks" of vacation to which police of a city which accepted G. L. c. 41, § 111D, are entitled annually are calendar weeks and not five day working weeks, and are in addition to days off under c. 147, § 16C, previously accepted by the city, excusing police "from duty for two days out of every seven" and § 17, providing that in no case should the number "of such days off" be less than one hundred and four in each year.

BILL IN EQUITY filed in the Superior Court on January 30, 1969.

The suit was heard by *Meagher,* J.

*John F. Moriarty* for the defendant.

*Efrem A. Gordon* for the plaintiff.

REARDON, J.   The defendant, the mayor of Holyoke, appeals from a final decree entered on a bill for declaratory relief.   The matter came before the Superior Court in what was essentially a case stated.   The plaintiff sought an interpretation of G. L. c. 41, § 111D,[1] and c. 147, §§ 16C and 17,[2] which sections have been duly adopted by the city of Holyoke.   These sections together provide that police "shall be excused from duty for two days out of every seven without loss of pay" for a total in Holyoke of 104 days in each year "in addition to any annual vacation now or hereafter allowed to . . . [police], and such annual vacation shall not be diminished on account thereof."

It is the contention of the plaintiff that these provisions read together entitle the police to three or more calendar

---

[1] "In any city or town which accepts this section, all members of its regular police . . . force may be granted a vacation without loss of pay.   Such vacations shall be computed in the following manner: — For five years' service, but less than ten years' service, a vacation of three weeks.   For ten years' service or more, a vacation of four weeks.   Section one hundred and eleven shall not apply to the members of the regular or permanent police . . . force in any such city or town."

[2] "Section 16C.   Members of the police department of every city or town which accepts this section by vote of the city council, subject to the provisions of the charter, or by vote of the town at an annual town meeting, as the case may be, or, if said city council or town fails to accept this section, by vote of the voters thereof as hereinafter provided, shall be excused from duty for two days out of every seven without loss of pay. . . ."

"Section 17.   The time and manner of excusing members of police departments from duty in any town subject to any of the six preceding sections shall be determined by the chief, superintendent or other officer or board at the head of the police department.   A member so excused shall be exempt from duty and from attendance at a police station or other place, but otherwise shall be subject to all laws, rules and regulations relating to members of the department to which he belongs.   The chief, superintendent or other officer or board at the head of the police department of any such town may, in case of any public emergency, or of any unusual demand for the services of the police in that town, prevent any member of the department from taking the day off at the time when he is entitled thereto, or at the time assigned therefor, provided that such day off shall be granted to him as soon thereafter as is practicable.   In no case shall the number of such days off be less than . . . one hundred and four in each year in a town subject to section sixteen C, and they shall be in addition to any annual vacation now or hereafter allowed to . . . [police], and such annual vacation shall not be diminished on account thereof. . . ."

weeks of vacation in addition to their 104 days off in the year. The defendant, however, asserts that the provisions in question entitle the police to only three or more working weeks of vacation; i.e., a twenty-one days' vacation under c. 41, § 111D, would include six days of the 104 days off provided by c. 147, §§ 16C and 17.

The judge held that by the adoption of c. 147, §§ 16C and 17, the city was "required to measure the vacation period by calendar-week, which means a seven-day week; and that the 104–day period annually" provided in c. 147, § 17, "is separate and distinct from the vacation period." The final decree so provided in substance. There was no error.

In 1957, five years after the city adopted c. 147, § 16C, it adopted c. 41, § 111D, providing for three or four weeks' vacation for policemen. It seems clear that if the police had no regular days off weekly on the assumption that Holyoke had not previously adopted c. 147, § 16C, the adoption of c. 41, § 111D, would entitle them to three or more calendar weeks' vacation. If, as is argued, in the present posture they are entitled to only three or more working weeks' vacation, their annual vacation would be diminished on account of the adoption of c. 147, § 16C, prior to the adoption of c. 41, § 111D. This would violate the specific terms of c. 147, § 17, which provides that the days off a year "shall be in addition to any annual vacation now or hereafter allowed to members of said departments, and such annual vacation shall not be diminished on account thereof."

The defendant argues that "weeks" as employed in c. 41, § 111D, should be construed to mean "working weeks" rather than "calendar weeks," and that the Legislature must have adopted this meaning in enacting St. 1949, c. 384, inserting § 111D in c. 41. He bases this on our opinion in *De Weerdt* v. *Springfield*, 295 Mass. 523. But this was not the issue in the *De Weerdt* case. The issue was not the number of days in the vacation week but rather the number of hours in the work week. Were we confronted with a comparative issue in this case we would be deciding whether

the police, under statutes we were discussing, were entitled to five or seven days' pay for every week of vacation. In such an event our decision would turn largely on the applicability of §§ 16C and 17 of c. 147, which were not before the court in the *De Weerdt* case. Thus, we do not consider that case helpful here.

The defendant has elaborated on the history of c. 147, §§ 16C and 17, with the intent of demonstrating that these sections were not designed to *extend* annual vacations for policemen but rather to provide for a normal work week of five days. Clearly the primary purpose of these sections is as the defendant claims. However, the fact that the language now in § 17 ("they shall be in addition . . .") has been in the act since the first provision for days off for police was passed in 1908 would indicate that the proper interpretation is not that urged by the defendant. That section (St. 1908, c. 476) provided for one day off in thirty; successive sections, all permissive like § 16C (St. 1911, c. 210; St. 1920, c. 166; St. 1937, c. 85, § 1; St. 1938, c. 426, § 2, now c. 147, §§ 14–16B) provided for one day off in fifteen, eight, seven and six days respectively. In municipalities which are governed by any of the above sections other than § 16A, c. 41, § 111D, must mean calendar weeks rather than working weeks because the regular days off do not occur on a weekly basis.

A further argument of the defendant that the city intended to grant vacations of five day weeks when it adopted c. 41, § 111D, in 1957 is based on the assertion that the concept of a five day week for police was then firmly established there. Even if this was the intention (and one may doubt it since it appears that the Holyoke police have been taking calendar week vacations for some time), this was not the effect of the action by the city.

There is no occasion now to consider to what extent the city may adjust its arrangements on time off and vacations. See, however, *Brucato* v. *Lawrence*, 338 Mass. 612, 615–616; *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 496. We hold merely that, if vacations are granted under c. 41,

§ 111D, they "*shall* be computed" (emphasis supplied) as provided therein, and that "weeks" means calendar weeks in addition to whatever regularly scheduled days off are given to the police.

*Decree affirmed.*