MEDFIELD POLICE LEAGUE *vs.* BOARD OF SELECTMEN
OF MEDFIELD.

Norfolk. June 13, 1980. — July 11, 1980.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Police. Municipal Corporations*, Employees, Vacations. *Statute*, Acceptance.

A town which had accepted the provisions of G. L. c. 41, § 111D, and
c. 147, §§ 16C and 17, could not thereafter amend its personnel administration plan in such a way as to reduce the entitlement to vacation benefits proscribed by the statutes. [266-268]

PETITION filed in the Superior Court on November 2,
1972.

The case was heard by *Beaudreau, J.*

*Charles Fuller, Jr.,* Town Counsel, for the defendant.

*Robert B. Russell* for the plaintiff.

GREANEY, J. This appeal raises the question whether a
town may amend its personnel administration plan in such a
way as to reduce entitlement to vacation benefits for its
regular police officers prescribed by statutes previously accepted by the town. A judge of the Superior Court determined that it could not. We agree and affirm the judgment
entered pursuant to his order.

The plaintiff, the representative of the regular police officers in the town of Medfield, brought suit in 1972, seeking
orders compelling the defendant to compensate its members
for vacation benefits from 1957 forward in accordance with
the provisions of G. L. c. 41, § 111D, and G. L. c. 147,
§§ 16C and 17, as those sections have been interpreted by
the decision in *Holyoke Police Relief Assn.* v. *Mayor of
Holyoke,* 358 Mass. 350 (1970). The defendant appears to
concede that the plaintiff's members are entitled to pay-

ment for the vacation benefits they seek from 1957 until 1972, when the town changed its personnel administration plan to reduce the three- and four-week vacation periods specified in c. 41, § 111D, to fifteen- and twenty-day periods respectively. Thereafter, the defendant contends the entitlement was effectively limited to what the town has in fact paid or provided for under the amended plan. The judge ruled that the plaintiff's members are "entitled to the continuing monetary benefits of G. L. c. 41, § 111D, and G. L. c. 147, §§ 16C [and 17], as interpreted by the *Holyoke* Police case . . . [from] March, 1957, to the present . . . [with] interest on the monies due . . . ."

General Laws c. 41, § 111D, inserted by St. 1949, c. 384, provides that: "In any . . . town which accepts this section, all members of its regular police . . . force may be granted a vacation without loss of pay [which] shall be computed in the following manner: — [f]or five years' service, but less than ten years' service, a vacation of three weeks[;] [f]or ten years' service or more, a vacation of four weeks." Medfield accepted the provisions of this statute in 1952. General Laws c. 147, § 16C, inserted by St. 1951, c. 346, § 1, provides that: "Members of the police department of every . . . town which accepts this section . . . shall be excused from duty for two days out of every seven without loss of pay . . . ." General Laws c. 147, § 17, as amended through St. 1970, c. 886, § 1, provides: "In no case shall the number of such days off be less than . . . one hundred and four in each year in a town subject to section sixteen C, and they shall be in addition to any annual vacation now or hereafter allowed . . . and such annual vacation shall not be diminished on account thereof." Medfield appears to have accepted these statutes in 1957. In construing this configuration of statutes, the Supreme Judicial Court held in *Holyoke Police Relief Assn.* v. *Mayor of Holyoke,* 358 Mass. 350 (1970), that the Legislature, in providing for vacations measured in "weeks," meant calendar weeks, and that police officers are entitled to the number of calendar weeks of vacation specified in G. L. c. 41, § 111D, in addition to the total

of 104 days off specified in G. L. c. 147, §§ 16C and 17. See
*Gurley* v. *Bridgewater,* 4 Mass. App. Ct. 149, 151 (1976);
*Shea* v. *Springfield,* 8 Mass. App. Ct. 883 (1979).

The purported change brought about by the amendment
to the personnel administration plan was a nullity because it
contradicted the statutes. Once the town had accepted the
provisions of G. L. c. 41, § 111D, and G. L. c. 147, §§ 16C
and 17, it was bound to allow and pay for vacation time in
strict compliance with the statutory provisions. The town
could not use the device of an amendment to its personnel
plan, even though approved by a vote at a town meeting, to
alter a statutory source of vacation entitlement or to seek to
revoke its acceptance of the statutes, a fact implicitly recog-
nized by the insertion of language in the vote adopting the
amendment stating that any "conflict" between the amend-
ment to the plan and "any other law" would be resolved in
favor of the "other law." Cf. *Nugent* v. *Wellesley,* 9 Mass.
App. Ct. 202, 204 (1980). See Hardy, Municipal Law § 15
(1971) ("Once having accepted a general act of the legisla-
ture, a city or town cannot revoke its acceptance, unless the
particular act permits such revocation and sets up the legal
machinery for it").

The defendant argues that the words "may be granted a
vacation" in the first sentence of c. 41, § 111D, provided the
town with discretionary authority to alter police vacation
entitlement from time to time. The remainder of that
statutory section and the *Holyoke* decision (358 Mass. at
354) make it plain that the vacation periods specified there-
in are mandatory. The defendants contended at oral argu-
ment that a sentence in the *Holyoke* case sanctions changing
time off and vacations to fit a municipality's particular
needs. The sentence in question states: "There is no occa-
sion now to consider to what extent the city may adjust its
arrangements on time off and vacations." *Holyoke, supra.*
This sentence is followed by citations to the decisions in
*Brucato* v. *Lawrence,* 338 Mass. 612, 615-616 (1959), and
*Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 496
(1970). Both of these cases, at the pages cited, affirm the

settled rule that once a statute is accepted by a local munici-pality, it becomes "applicable statute law, subject to change, as in the case of other statutes, only by subsequent action of the Legislature." *Brucato* at 616. *Brucato* also outlines the limited circumstances (none of which is ap-plicable to the statutes involved in this case) under which a municipality may revoke acceptance of a previously ac-cepted statute. See also G. L. c. 4, § 4A. And the decisions in *Gurley* v. *Bridgewater,* 4 Mass. App. Ct. 149, 151 (1976), and *McNamara* v. *Selectmen of Westwood,* 5 Mass. App. Ct. 805 (1977), are not helpful to the defendant's position because the municipalities involved in those cases had not accepted G. L. c. 41, § 111D (*Gurley*), or G. L. c. 147, §§ 16C and 17 (*McNamara*).

Some final points require brief discussion. There is an in-timation in the defendants' brief that the town was en-trapped by the *Holyoke* decision and that, had the result in that case been foreseen, the town would not have accepted the statutes. The notion is without merit. Cf. *Broderick* v. *Mayor of Boston,* 375 Mass. 98, 103 (1978). The question of the effect, if any, of collective bargaining agreements on the years in question was not put before the judge below. Ac-cordingly we will not consider it or express any opinion thereon. See G. L. c. 149, § 178I, as in effect prior to St. 1973, c. 1078, § 1. See now G. L. c. 150E, § 7(*d*), (*e*), (*h*). See also *Gurley* v. *Bridgewater,* 4 Mass. App. Ct. at 151. The same applies to questions as to possible laches or waiver on the part of the plaintiff's members. See *Shea* v. *Springfield,* 8 Mass. App. Ct. 883, 884 (1979), citing *Erickson* v. *Waltham,* 2 Mass. App. Ct. 436, 450-451. (1974). Interest on the amounts to be paid was also proper-ly ordered by the judge. *Marlborough Firefighters, Local 1714* v. *Marlborough,* 375 Mass. 593, 600 (1978).

*Judgment affirmed.*